IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GREAT AMERICAN ASSURANCE
COMPANY, an Ohio corporation,

    Plaintiff,

  v.

LIBERTY SURPLUS INSURANCE
CORPORATION, a New Hampshire
corporation; and ESQUIVEL PAVING
AND GRADING, a California corporation,

    Defendants.
                                       /

No. C 09-00336 WHA

**ORDER DENYING MOTION
TO DISQUALIFY COUNSEL
AND TO STRIKE FROM
THE RECORD PRIVILEGED
INFORMATION AND
VACATING HEARING**

**INTRODUCTION**

Defendant Liberty Surplus Insurance brings this motion to strike from the record attorney-client privileged and work-product protected communication allegedly inadvertently sent to an agent for Great American Assurance Company. Liberty also argues that Great American's counsel should be disqualified for not returning and for using the communication. In reply, Great American maintains that this motion was brought for an improper purpose and asks this Court for attorney's fees and costs.

This order holds that Liberty has not met the burden of proving that the communication was involuntarily sent, thereby waiving any privilege and work-product protection. This order also holds that there are no grounds to disqualify Great American's counsel. Thus, Liberty's motion to strike privileged and protected information from the record and to disqualify

1

Great American's counsel is **DENIED**. Great American's request for attorney's fees and costs is also **DENIED**. The hearing set for September 24, 2009, is **VACATED**.

**STATEMENT**

In this action, Great American seeks reimbursement of the fees and costs it expended in defending Trinet Construction, Inc., in the Superior Court of California for the County of San Francisco action, *Domenichini v. Trinet Cosntructions, Inc.*, Case No. CGC 07-469614. Great American, the commercial general liability insurer of Trinet, defended Trinet in the state action. Great American contends that Liberty was obligated to defend Trinet as an additional insured under a policy Liberty issued to co-defendant Esquivel. Trinet tendered the *Domenichini* action to Liberty, but Liberty initially denied the tender. Thereafter, a subsequent tender was made. To help it determine whether it should accept Trinet's renewed tender of the *Domenichini* action, Liberty requested a coverage opinion from the law firm of McCormick, Barstow, Sheppard, Wayte & Carruth, Liberty's coverage counsel and counsel in this action.

On September 8, 2008, Jerome Smith, Trinet's insurance broker, contacted Maria Allen, claims specialist for Liberty International Underwriters, to ask if Liberty Surplus Insurance had changed its position in whether it would cover Trinet. During that conversation, Allen advised Smith that she would be providing him with Liberty's coverage position.[1]

On September 8, 2008, coverage counsel's opinion was sent by coverage counsel, Attorney Patrick Fredette of McCormick, to Allen, a Liberty claims specialist. The email stated that "[a]ttached is the coverage opinion in regard to this matter." On September 9, 2008, Allen forwarded by email coverage counsel's opinion to Smith, Trinet's insurance broker. In her email, Allen wrote "[a]ttached is a copy of the defense counsel coverage position." On the same day, Smith replied to Allen and also copied John Trees, a claims manager for Liberty International Underwriters. Smith thanked Allen for providing him with a copy of Liberty's "coverage counsel's opinion" on the matter. He further inquired if that previous email meant that Liberty would now be defending Trinet. Allen, on the same day, responded that she had drafted a

---

[1] Liberty International Underwriters is the claims administrator for Liberty Surplus Insurance.

2

1  coverage letter that was being reviewed for approval. She stated that once it was approved, she
2  would forward a copy to Smith.

3  Subsequently, Smith also had a phone conversation with Trees to confirm that Liberty
4  would be assuming Trinet's defense. During that conversation, Trees advised Smith that he had
5  also reviewed and received coverage counsel's opinion. On September 19, 2008, Trees emailed
6  Allen and copied Smith to explain that he agreed with Smith that coverage counsel's opinion
7  revealed a duty to defend. Trees directed Allen to issue a revised coverage position letter from
8  Liberty stating that Liberty would defend Trinet.

9  Liberty now claims that, on September 8, 2008, Allen was not aware that she was sending
10 coverage counsel's opinion to Smith and that she had done so inadvertently. Liberty also claims
11 that it was not aware of this allegedly inadvertent disclosure until late October 2008. For his part,
12 Smith states that he was never informed by Liberty that coverage counsel's opinion was
13 inadvertently produced or privileged despite his communications with Allen and Trees about the
14 opinion subsequent to receiving it. Smith had promptly sent coverage counsel's opinion to Great
15 American, Trinet's insurer, and to counsel for Trinet. On behalf of Liberty, coverage counsel
16 eventually made written requests to Great American asking for the return of the coverage opinion.
17 Great American, however, refused to do so, claiming that any privilege or work-product
18 protection was voluntarily waived.

19 The present action commenced on January 26, 2009. A copy of coverage counsel's
20 opinion was included among the documents Great American produced to Liberty from Great
21 American's claims file in connection with Great American's initial disclosures under Federal
22 Rule of Civil Procedure 26. On July 21, 2009, Great American also appended the opinion as
23 an exhibit in support of its motion for summary judgment against Liberty. On August 6, 2009,
24 the day Liberty's opposition to Great American's motion for summary judgement was due,
25 Liberty filed this motion to disqualify Great American's counsel and to strike coverage counsel's
26 opinion from the record. Both parties have briefed the matter and this order analyzes those briefs.
27 This order holds that Liberty's motion to strike coverage counsel's opinion from the record and to
28

3

disqualify plaintiff's counsel is denied and that Great American's request for attorney's fees and costs is denied.

## ANALYSIS

**1. GREAT AMERICAN'S EVIDENTIARY OBJECTIONS TO DECLARATIONS.**

**A. First Objection to the Declaration of Maria Allen.**

Allen now states that she mistakenly sent the coverage opinion because she thought it was a report from defense counsel and that she "later learned" that the opinion was from coverage counsel. She further adds that the production of the opinion was in violation of "Liberty's claims handling guidelines."

*First*, Great American objects to the statement about "Liberty's claims handling guidelines" as lacking foundation. Federal Rule of Evidence 602 requires that "[g]enerally, a witness must have personal knowledge of the matter to which she testifies." Evidence to prove such knowledge may consist of the witness' own testimony. Fed. R. Evid. 602. The evidence is inadmissible if the trial court finds that the witness did not perceive or observe that to which she testifies. *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997). Personal knowledge includes opinions and inferences grounded in observations and experience. *United States v. Joy*, 192 F.3d 761, 767 (7th Cir. 1999).

Allen has been employed as a claims specialist for thirteen years. As an employee of thirteen years, she is likely aware of the protocols she must follow in implementing her position, including Liberty's claim handling guidelines. This establishes personal knowledge based on Allen's own experience and perceptions of Liberty's policies over her thirteen years as an employee. Thus, there is sufficient foundation for the statement.

*Second*, Great American objects that Allen's statement that she "later learned" the email she sent was from coverage counsel is vague as to the time period. Allen's statement, however, is not vague in terms of time since "later learned" refers to the time period after she sent the email. Evidence need not be sufficient to prove the point being made; it simply needs to have the slightest probative value. *Douglas v. Eaton Co.*, 956 F.2d 1339, 1344 (6th Cir. 1992). The statement is provided to support Liberty's argument that Allen inadvertently sent the email

4

because she sent it before she allegedly learned that it was from coverage counsel. Thus, this order holds that this statement is not vague as to time.

*Third*, Great American objects to Allen's statements on the grounds of relevancy. Federal Rule of Evidence 401 states that relevant evidence includes any evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence is relevant when it has the slightest probative value. The present dispute concerning attorney-client privilege and work-product protection hinges on whether the document was inadvertently sent. The statement objected to is entirely relevant since it discusses the circumstances surrounding the transmission of the opinion and whether the transmission was inadvertent. The statement is a fact of consequence that makes the "determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Thus, this order holds that this statement is relevant.

The first objection is denied on all three grounds.

### B. Second Objection to the Declaration of Maria Allen.

Allen states that she did not purposefully disclose any privileged or protected information.

*First*, Great American objects to Allen's statement on the grounds of relevancy. The statement is relevant since it makes the determination of the action more probable than if the evidence were not provided. The outcome hinges on the inadvertence of the action, therefore, Allen's intent is relevant since she was the one who sent the email.

*Second*, Great American objects on the grounds of vagueness and ambiguity. It is not apparent why the statement is vague or ambiguous since all the words are being used according to their ordinary usage and meanings.

Thus, the second objection is denied on both grounds.

5

### C. Other Objections.

In deciding this motion, this order does not rely on any of the statements that Great American objects to from the declarations of Trees or Fredette. Thus, Great American's objections concerning these declarations will not be addressed.

### 2. LEGAL STANDARD FOR PRIVILEGE AND WORK-PRODUCT ANALYSIS.

Pursuant to Federal Rule of Evidence 501, attorney-client issues in diversity cases are substantive and thus controlled by the forum state's law. The California Evidence Code declares that the attorney-client privilege is governed by statute. CAL. EVID. CODE § 911 (West 1995). The party claiming a privilege shoulders the burden of showing that the evidence it seeks to suppress falls within the terms of an applicable statute. *HLC Properties, Ltd. v. Superior Court of Los Angeles County*, 35 Cal. 4th 54, 59 (Cal. 2005). Unlike issues of attorney-client privilege, issues concerning the work-product doctrine are procedural and thus governed by Federal Rule of Civil Procedure 26(b)(3). *Bozzuto v. Cox*, 255 F.R.D. 673, 677 (C.D. Cal. 2009).[2]

### 3. ATTORNEY-CLIENT PRIVILEGE.

#### A. Applicability of Attorney-Client Privilege.

Great American does not argue that the document is not attorney-client communication. Instead, Great American argues the document was not privileged due to the disclosure allegedly being voluntary thereby waiving any privilege.

#### B. Waiver of Attorney-Client Privilege.

Liberty argues that the coverage letter was inadvertently sent by Allen, a Liberty claims specialist, to Smith, Trinet's insurance broker, as opposed to being voluntarily sent. California Evidence Code Section 912 states the applicable rule with respect to waiver of privileges:

> [privilege] is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder . . . .

CAL. EVID. CODE § 912 (West 1995). Waiver under Section 912, however, does not include accidental, inadvertent disclosure of privileged information . . . ." *State Comp. Ins. Fund v.*

---

[2] Unless otherwise indicated, all internal citations and quotes have been omitted throughout this order.

6

1  *WPS, Inc.*, 82 Cal. Rptr. 2d 799, 804–05  (Cal. Ct. App. 1999).  Liberty has the burden to prove
2  that the privilege applies.  *See HLC Properties*, 35 Cal. 4th at 59.

3   The email chain that Allen forwarded to Smith shows that in the original email sent from
4  coverage counsel, Fredette, to Allen, coverage counsel referred to the attachment as "coverage
5  opinion" (Allen Decl. Exh. A).  In Allen's email to Smith, however, Allen referred to the
6  attachment as "defense counsel coverage position."  Liberty argues that this proves that Allen
7  did not know she was sending coverage counsel's opinion.  Liberty also argues that Allen would
8  have never voluntarily sent the coverage opinion since that would violate company policy
9  (Reply Br. 2).  Allen even stated that she had no intention to disclose any privileged information
10 or attorney work-product (Allen Decl. ¶ 7).

11   These claims that a voluntary disclosure would violate company policy and go against
12 Allen's intentions, however, contradict Liberty's argument that Allen thought she was sending
13 communications from defense counsel.  Such communication is also privileged and attorney
14 work-product.  *State Farm Mut. Auto Ins. Co v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1429
15 (Cal. Ct. App. 1999) (stating that "[b]etween the attorney and the insurer who retained the
16 attorney and paid for the defense, there exists a separate attorney-client relationship endowed
17 with confidentiality").  Thus, Allen would be violating her own intentions and company policy
18 by sending defense counsel's opinion.

19   Moreover, Liberty fails to explain why documents from defense counsel would have been
20 sent to Smith in the first place.  The day before Allen sent the coverage opinion, Smith spoke
21 with her and inquired whether or not Liberty had decided to defend Trinet.  It appears that Allen
22 intended to send the coverage counsel's opinion since it was a relevant document considering it
23 would inform Smith, and later Trinet and Great American, whether Liberty would be defending
24 Trinet.  Liberty does not explain why Allen was not confused when Smith wrote her back on
25 September 9, thanking her for the "coverage counsel's opinion" (Smith Decl. Exh. 3).  In
26 addition, Trees emailed Allen on September 19 telling her that Smith had read the coverage
27 opinion and that Smith had discussed the coverage opinion with Trees.  Never once did Allen get
28 alarmed that this coverage opinion was in Smith's hands.

7

Liberty has not met its burden and has failed to prove that there was any coercion or that Allen inadvertently sent the letter. This case did not involve a massive amount of documents being swapped during discovery wherein an inadvertent disclosure is likely. Instead, this case involves the intentional emailing of a single document to a third-party. Liberty has not sufficiently proven that this disclosure was not voluntary. In addition, the decision cited by Liberty defining waiver is inapplicable because it was referring to waiver of a provision in an insurance policy and not waiver of the attorney-client privilege. *See Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 30–31 (Cal. 1995). Thus, this order holds that any attorney-client privilege shielding coverage counsel's opinion was waived.

### 4. WORK-PRODUCT DOCTRINE ANALYSIS.

#### A. Applicability of Attorney Work-Product Protection.

Great American does not argue that the document is not attorney work-product. Instead, Great American argues the document was not protected due to the disclosure allegedly being voluntary thereby waiving any attorney work-product protection.

#### B. Waiver of Attorney-Client Work Product Protection.

Liberty argues that the attorney work-product protection was not waived. Unlike for the attorney-client privilege, waiver of attorney work-product protection requires more than the disclosure of confidential information, it requires an act inconsistent with the adversary system. *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 328 (N.D. Cal. 1985). A voluntary waiver, however, "occurs when a party discloses [protected] information to a third party who is not bound [to maintain its confidence], or otherwise shows disregard for the [protection] by making the information public." *Bittaker v. Woodford*, 331 F.3d 715, 719, 720 n.4, 722 n.6 (9th Cir. 2003). "[I]n cases where the voluntary disclosure of attorney work product to [a] . . . third party substantially increases the possibility of an opposing party obtaining the information, this would defeat the policy underlying the privilege." *Bd. of Trs. of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 624 n.3 (N.D. Cal. 2006). In such a case, work-product waiver may be analyzed using the same analysis as for attorney-client privilege waiver. *Bd. of Trs.,* 237 F.R.D. at 624 n.3; *see also Transamerica Computer Co. v. Int'l Bus.*

8

*Mach. Corp.*, 573 F.2d 646, 647 n.1 (9th Cir. 1978) (using the same analysis for attorney-client privilege and work-product waiver when a document was handed over to a litigation adversary).

In this case, Liberty has failed to prove that the disclosure of the coverage opinion was anything but voluntary. Liberty points out that Smith failed to get Liberty's consent before sending the document to Great American; however, Smith was a third-party who was not obliged to ask for Liberty's consent. Handing over the attorney work-product protected opinion to Smith definitely increased the chances that Great American would be getting the document. This action is inconsistent with the adversary system. Thus, as with the attorney-client privilege, this order holds that there was a voluntary waiver of the attorney work-product protection.

Liberty cites to various decisions using the five-factor test used in *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 332 (N.D. Cal 1985), to determine if waiver should be found. This test, however, is only used to determine if privilege should be waived in the case of an inadvertent handover. *Id.* at 328 (stating that the disclosure will be analyzed under the case law applying to inadvertent disclosure). In *Hartford*, the argument was whether or not there could be waiver in the case the handover was not intentional. *Id.* at 328, 332 (disagreeing with the plaintiff who argued that inadvertent disclosure of documents cannot constitute a waiver as a waiver must be intentional). By contrast, in this case, this order holds that the handover was intentional. Thus, the *Hartford* test is inapplicable in this case.

Liberty invokes Federal Civil Rule 26(b)(5)(B) for the proposition that there was no waiver because a senate report states that the rule was enacted to remedy waiver due to an inadvertent disclosure. This proposition is wrong on three grounds. *First*, the rule is limited in scope to information produced in discovery, and the letter here was not produced in discovery. *Second*, the advisory notes discussing the 2006 amended rule clearly state that any question of waiver is to be left to later determination by the court; the rule was established as a way to assert protection but not to determine if there was waiver. *Third*, as discussed above, this order holds that Liberty has not met its burden of proving that the disclosure was involuntary. This order holds that attorney work-product protection was waived by Allen's email to Smith.

9

### 5. DISQUALIFICATION OF COUNSEL.

Liberty invokes *State Compensation* to argue that Great American's counsel should be disqualified for allegedly using privileged and protected documents. That decision, however, does not support such a proposition. In *State Compensation* the court held that a lawyer had an obligation to disclose the receipt of such information only "where it is reasonably apparent that the materials were provided or made available through inadvertence." *State Comp.*, 82 Cal. Rptr. at 808.

Unlike the cited decisions, in this action, Great American did not receive any communication directly from Liberty. This action is much different from a case wherein some privileged or work-product protected documents, part of a larger set of documents, were inadvertently sent with the larger set, thus indicating that it might be a mistake. In this action, a single document was sent, and it was not sent directly to opposing counsel. Thus, it was not reasonably apparent that the coverage opinion was inadvertently sent. In fact, it may have been reasonably apparent that any privilege or protection was waived. It would not be unreasonable for Great American to think that the opinion was being sent to show Liberty's agreement to now defend Trinet. Also, for well over a month, Liberty did not bring up the issue of inadvertent disclosure despite communicating with Smith, Trinet's broker, and having knowledge that Smith had been emailed coverage counsel's opinion. In fact, as evidenced by Trees' September 19 email, Trees and Smith had a discussion about the contents of coverage opinion. Based on these circumstances, Great American would have had little reason to think that the original email was not voluntarily sent. Consequently, disqualification is improper in this case.

In addition, *State Compensation* held that "whenever a lawyer seeks to hold another lawyer accountable for misuse of inadvertently received confidential materials, the burden must rest on the complaining lawyer to persuasively demonstrate inadvertence." *Id.* at 808. Such a burden is necessary, otherwise "a lawyer might attempt to gain an advantage over his or her opponent by intentionally sending confidential material and then bringing a motion to disqualify the receiving lawyer." *Ibid.* As stated above, this order holds that Liberty has failed to meet such a burden.

Liberty also invokes *Rico v. Mitsubishi Motors Corp.*, 171 P.3d 1092 (Cal. 2007), to additionally support its argument for disqualification. *Rico*, however, applies the rule from *State Compensation*. As explained above, this order holds that *State Compensation* would not support a disqualification. Liberty also argues that *Rico* supports the proposition that receiving a document from a third-party does not cause the loss of privilege. In *Rico*, however, the document was allegedly mistakenly handed over by a court report who would ordinarily have access to such documents without the documents losing any protection. By contrast, the present case involves the deliberate sending of a protected document by an attorney to a third-party who was not a court employee or a client but, instead, someone who was affiliated with an adversary. This is much different than the situation in *Rico* since a party would not expect that a document handed over to an adversary, as opposed to a court or client, would remain privileged or protected.

**6. GREAT AMERICAN'S REQUEST FOR ATTORNEY'S FEES AND COSTS.**

Great American requests that Liberty be ordered to compensate Great American for attorney's fees and costs. Under the present circumstances, however, Great American's request is denied.

**CONCLUSION**

This order holds that Liberty has waived any attorney-client privilege and attorney work-product protection of coverage counsel's opinion and holds that there are no grounds to disqualify Great American's counsel. Thus, Liberty's request to strike privileged and protected information from the record is **DENIED**. This order also holds that Great American's request for attorney's fees and costs is **DENIED**. The hearing set for September 24, 2009, is **VACATED**.

**IT IS SO ORDERED.**

Dated: September 17, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11